**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alanco Technologies, Inc., an Arizona corporation; Technology Systems International, Inc., f/k/a TSI Acquisition Corporation, an Arizona corporation; Robert R. Kauffman and Elizabeth Kauffman, husband and wife; Greg E. Oester and Linda Oester, husband and wife,<br><br>          Plaintiffs,<br><br>vs.<br><br>Carolina Casualty Insurance Company, a Florida corporation,<br><br>          Defendant. | No. CV-04-789-PHX-DGC<br><br>**ORDER** |

Pending before the Court are the parties' motions for summary judgment. Docs. ##78, 80. Also pending are Defendant's motions to strike evidence. Docs. ##93, 95. For the reasons set forth below, the Court will grant Defendant's motion for summary judgment and deny Plaintiffs' motion for summary judgment and Defendant's motions to strike.[1]

---

[1] The Court will deny the request for oral argument because the parties have submitted memoranda thoroughly discussing the law and evidence and the Court concludes that oral argument will not aid its decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

1  **I.      Background**

2        Plaintiffs commenced this action by filing a complaint against Defendant in state court
3  on March 19, 2004. The complaint asserted claims for declaratory relief, breach of contract,
4  breach of the duty of good faith and fair dealing, and bad faith. The case was removed to this
5  Court on April 22, 2004. Doc. #1. On November 30, 2004, Plaintiffs filed an amended
6  complaint asserting the same four claims as the original complaint. Doc. #42. The first
7  claim seeks a judgment declaring that, pursuant to a "claims made" insurance policy between
8  Defendant and Plaintiff Alanco Technologies ("Alanco"), Defendant is obligated to pay any
9  losses sustained by Plaintiffs as a result of three claims made by Technology Systems
10 International of Nevada ("TSIN"): an October 17, 2002 letter ("Letter"), a state court
11 complaint filed on January 30, 2003 ("Original Suit"), and an amended complaint filed in the
12 Original Suit on July 31, 2003 ("Amended Suit"). *Id.*

13       The parties filed cross motions for summary judgment on March 11, 2005. Docs.
14 ##50-51. In a May 19, 2005 order, the Court granted the motions in part. Doc. #58. The
15 Court held that the "insured versus insured" ("IVI") exclusion contained in the policy applied
16 to the Letter, but did not apply to the Amended Suit. Doc. #58.[2] The Court also granted
17 summary judgment in Defendant's favor on the breach of the duty of good faith and fair
18 dealing and bad faith claims. *Id.*

19       The present motions for summary judgment were filed on January 13, 2006. Docs.
20 ##78, 80. Plaintiffs argue that Defendant is obligated under the policy to reimburse the costs
21 Plaintiffs incurred in defending the Amended Suit. Doc. #78. Defendant argues that there
22 is no coverage because Plaintiffs have sustained no loss under the policy. Doc. #80.

23 **II.     Discussion.**

24     **A.      Summary Judgment Standard.**

25       Summary judgment is appropriate if the evidence, viewed in the light most favorable
26 to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and

27
28       [2] The Court previously had ruled that the IVI exclusion applied to the Original Suit. *See* Doc. #37.

1 that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*
2 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Only disputes over facts that might
3 affect the outcome of the suit . . . will properly preclude the entry of summary judgment."
4 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be
5 entered against a party who "fails to make a showing sufficient to establish the existence of
6 an element essential to that party's case, and on which that party will bear the burden of
7 proof at trial." *Celotex*, 477 U.S. at 322.

8       **B.**     **Analysis.**

9       The insurance policy between Defendant and Alanco provides that Defendant shall
10 pay the loss of Alanco and the directors and officers of Alanco arising from any claim first
11 made against them during the policy period. Docs. ##79 Ex. 3, 81 Ex. J § I. The policy
12 defines the term "loss" as follows: "'Loss' means damages, judgments, settlements, and
13 Costs of Defense; however, 'Loss' shall not include . . . matters which may be deemed
14 uninsurable under the law pursuant to which this Policy shall be construed." *Id.* § III(I).

15       Plaintiffs seek $752,333.59 in legal fees and costs purportedly related to the defense
16 of the Amended Suit. Doc. #80 at 10. Defendant argues that Plaintiffs have not sustained
17 a covered "loss" under the policy. Doc. #78 at 3-7. Specifically, Defendant argues that the
18 Amended Suit seeks rescissory damages – i.e., consideration that Alanco should have paid
19 to TSIN shareholders when it obtained TSIN's assets in exchange for Alanco stock – and that
20 such damages are uninsurable as a matter of law because they constitute the return of an
21 "ill-gotten gain." *Id.* (citing *Level 3 Comm'ns, Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 910 (7th
22 Cir. 2001) ("The interpretive principle for which Federal contends – that a 'loss' within the
23 meaning of an insurance contract does not include the restoration of an ill-gotten gain – is
24 clearly right."); *Conseco, Inc. v. Nat'l Union Fire Ins. Co.*, No. 49D130202CP000348, 2002
25 WL 31961447, *6 (Ind. Cir. Ct. Dec. 31, 2002) ("It is axiomatic that insurance cannot be
26 used to pay an insured for the amounts an insured wrongfully acquires and is forced to
27 return[.]"); *Pan Pac. Retail Props., Inc. v. Gulf Ins. Co.*, No. Civ.03-CV-679 WQH, 2004
28 WL 2958479, *5 (S.D. Cal. July 14, 2004) ("The Court concludes that as a matter of law

restoration of an 'ill-gotten' gain' is not insurable.")). Defendant also cites authority for the proposition that defense costs are only recoverable for covered losses. *Id.* at 6 n.2 (citing *Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*, 782 N.Y.S.2d 19, 20 (N.Y. App. Div. 2004); *Hurley v. Columbia Cas. Co.*, 976 F. Supp. 268, 275 (D. Del. 1997) ("Neither the duty to defend nor the undertaking to advance defense costs compels Columbia to pay defense costs on a claim that is not covered by the Policy."); *Kenai Corp. v. Nat'l Union Fire Ins. Co.*, 136 B.R. 59, 64 (S.D.N.Y. 1992) ("[P]olicies requiring the insurer to reimburse damages and defense costs related to wrongful acts entitle the insured to costs only when the underlying claims are covered by the policy.")).

Plaintiffs do not challenge Defendant's legal authority. Rather, Plaintiffs contend rather cryptically that Defendant's "no loss" argument is moot because TSIN waived rescission as a potential remedy in the Amended Suit. Docs. ##84 at 12. In support of this argument, Plaintiffs submit a December 1, 2004 Bankruptcy Court order stating that "all claims and remedies regarding rescission of Alanco's purchase of substantially all of the assets of Debtor [TSIN] now pending in the Alanco Litigation are waived." Doc. #85, Ex. B at 3. Plaintiffs provide no additional evidence to explain the intent or effect of this order.

Defendant counters that the waiver of rescission is immaterial because the Amended Suit also seeks rescissory damages. Doc. #94 at 4-6. In a separate reply in support of their motion for summary judgment, Plaintiffs argue that the Amended Suit included only a single claim for rescission and that other covered claims required Defendant to tender the costs of defense. Doc. #96 at 5 & n. 1. But Plaintiffs never identify or describe these other claims or respond to Defendant's argument that all of the claims essentially seek rescission or rescissory damages. The Court therefore has reviewed the claims of the Amended Suit. Doc. #79 Ex. A.

The suit arises entirely out of a transaction in which Alanco acquired significant assets of TSIN in exchange for Alanco stock. The suit alleges that Plaintiffs made various misrepresentations to induce TSIN to part with its assets and accept Alanco stock worth far less than Alanco had promised. The suit alleges that TSIN "has been stripped of all of its

- 4 -

assets . . . and has been left with a block of Alanco stock with materially and substantially less value and voting power than that which was promised to the [TSIN] shareholders." *Id.* ¶ 62. The Amended Suit includes various causes of action, all of which arise from the transaction.[3] Most of the claims expressly seek rescission or rescission-type damages, including rescission (¶ 72), voiding of the transaction (¶¶ 92, 95), the benefit of the bargain (¶ 106-107), or the recovery of TSIN assets through a constructive trust (¶ 117). Although some of the claims seek damages "in an amount to be determined at trial" (¶¶ 81, 87, 101, 113), the complaint as a whole makes clear that the alleged injury to TSIN was the transfer of its assets to Alanco in exchange for less valuable stock. The complaint alleges a variety of Alanco misrepresentations – about the value of its assets, the money it would invest in developing and marketing TSIN assets, and the nature and viability of its business plans – but the effect of the misrepresentations is alleged to have been the same – to induce TSIN to exchange its assets for stock less valuable than promised.

In short, the Amended Suit seeks to recover Alanco's ill-gotten gains – the value of TSIN assets which Alanco acquired without paying adequate consideration, or, stated differently, the stock value Alanco promised to pay TSIN, but never actually delivered. The fact that TSIN waived the remedy of rescission in the Bankruptcy proceeding does not alter the fact that the remainder of the Amended Suit seeks to recover such gains. Indeed, Plaintiffs never argue that the waiver of rescission in the Bankruptcy Court constituted a waiver of rescissory damages, much less a waiver of the various other rescission-like remedies sought in the Amended Suit – voiding the transaction, benefit of the bargain, or constructive trust. *See* Docs. ##84 at 12, 96 at 4-5. Because such claims constitute the gravamen of the Amended Suit, Defendant's "no loss" argument is not moot as Plaintiffs contend. *See Conseco*, 2002 WL 31961447 at *8 (citing *Level 3* and stating that "just

---

[3] The Amended Suit asserts claims for fraud in the inducement, fraud, negligent misrepresentation, securities fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and constructive trust and accounting. Doc. #79 Ex. A.

- 5 -

1  because a settlement of money damages is paid to the plaintiff does not mean the damages
2  do not represent ill-gotten gain").

3  The policy in this case defines both damages and defense costs as components of
4  "loss." Docs. ##79 Ex. 3, 81 Ex. J § III(I). The policy further provides, however, that "[l]oss
5  shall not include . . . matters which may be deemed uninsurable under the law[.]" *Id.*
6  Because rescissory damages are uninsurable under the law, and defense costs are recoverable
7  only for covered losses, Plaintiffs have suffered no loss under the policy. *See Vigilant Ins.*
8  *Co.*, 782 N.Y.S.2d at 20 ("The policy defines defense costs as a component of 'Loss,' which
9  'shall not include matters which are uninsurable under the law . . . . As indicated, restitution
10 of ill-gotten funds is not insurable under the law . . . [and] defense costs are only recoverable
11 for covered claims."); *Level 3 Comm'ns*, 272 F.3d at 911 ("An insured incurs no loss within
12 the meaning of the insurance contract by being compelled to return property that it had
13 stolen, even if a more polite word than 'stolen' is used to characterize the claim for the
14 property's return."); *Conseco*, 2002 WL 31961447 at *11 (Ind. Cir. Ct. Dec. 31, 2002)
15 ("Courts have generally found that if an insured wrongfully acquires funds and then is forced
16 to return the funds, . . . it has not suffered a loss[.]"); *Big 5 Corp. v. Gulf Underwriters Ins.*
17 *Co.*, No. CV 02-3320WJR(SHX), 2003 WL 22127029, *5 (C.D. Cal. July 14, 2003) ("Since
18 the . . . lawsuit against Plaintiff Big 5 did not involve a covered "loss," . . . Defendant Gulf
19 is not required to assume responsibility for Plaintiff Big 5's defense costs."); *see also*
20 *Transamerica Ins. Group. v. Meere*, 649 P.2d 181, 186 (Ariz. 1984) (stating that "public
21 policy . . . forbids contracts indemnifying a person against loss resulting from his own willful
22 wrongdoing" and that intentional act exclusions in insurance policies "prevent an insured
23 from acting wrongfully with the security of knowing that his insurance company will 'pay
24 the piper' for damages").

25 The Court will grant summary judgment in Defendant's favor. In light of this ruling,
26 the Court need not address the parties' other arguments or motions.

27 **IT IS ORDERED:**

28 1.     Defendant's motion for summary judgment (Doc. #78) is **granted**.

- 6 -

2. Plaintiffs' motion for summary judgment (Doc. #80) is **denied**.

3. Defendant's motions to strike (Docs. ##93, 95) are **denied** as moot.

4. The Clerk shall enter final judgment accordingly.

DATED this 17th day of May, 2006.

_____
David G. Campbell
United States District Judge